IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| CARL JONES | : | NO. 07-614 |

April 16, 2009                                                                                         Legrome D. Davis, J.

MEMORANDUM

On April 6, 2009, this Court sentenced Defendant Carl Jones to a term of imprisonment of 300 months following his conviction by a jury for the offense of being a felon in possession of a firearm.  We determined during the sentencing that a sentencing enhancement pursuant to section 4B1.4 of the United States Sentencing Guidelines was appropriate in this case because Jones utilized the weapon in connection with a crime of violence.  We also determined that Jones was not entitled to an offense level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility.  Finally, we found that the relevant sentencing factors set out in 18 U.S.C. § 3553 required that we sentence Jones to a lengthy imprisonment term.  Below, we explain in greater detail the reasoning behind each of these conclusions.

I.       BACKGROUND

On September 18, 2005, Jones was arrested near a Temple University fraternity party for being a felon in possession of a firearm.  That night, Jones had engaged in an argument with some of the Temple students who had attended the party.  During the argument, Jones pointed a gun at the students and ordered them to get in his car.  The students refused.  Moments later,

1

members of the Temple University police force arrived on the scene. Jones initially told the officers that there was no problem and began to walk away. As he turned away, one of the students told the officers that Jones had a gun. At that point, Jones began to run and reached a nearby alley pursued by two of the officers. Upon entering the alley, Jones fell to the ground and threw the gun over a nearby fence. Jones was apprehended and eventually charged with being a felon in possession of a firearm. On November 21, 2008, following a three-day jury trial, Jones was found guilty.

In his Sentencing Memorandum, Jones challenged the Pre-Sentence Report ("PSR") prepared by the Probation Office arguing that: 1) it incorrectly included a sentencing enhancement pursuant to U.S.S.G. § 4B1.4 for Jones's possession of the firearm in connection with a crime of violence; 2) it incorrectly excluded a two-level sentencing reduction due to Jones's acceptance of responsibility; and 3) the factors outlined in 18 U.S.C. § 3553(a)(2) called for a lenient sentence in this case. During the Sentencing Hearing conducted on April 6, 2009, we rejected Jones's challenges for the reasons stated below and sentenced him to a term of imprisonment of 300 months.

II.     SENTENCING ENHANCEMENT FOR CRIME OF VIOLENCE

Pursuant to U.S.S.G. § 4B1.4 a defendant who is deemed to be an armed career criminal[1] is subject to a one point offense level enhancement and a criminal history category enhancement if "the defendant used or possessed the firearm or ammunition in connection with . . . a crime of violence." U.S.S.G. §§ 4B1.4(b)(3)(a), 4B1.4(c)(2)(a). The PSR in this case states that the

---

[1] Jones did not object, either in his sentencing document or at the sentencing hearing, to the PSR's finding that he was a career criminal for the purposes of this section.

sentencing enhancement is appropriate here because Jones possessed the gun in connection with a simple assault. (PSR ¶¶ 17-23.) Jones asserts that the sentencing enhancement does not apply in this case because: 1) simple assault is not a crime of violence under the definition established by the Sentencing Guidelines; and 2) there was "no credible evidence" at trial that Jones possessed the weapon in connection with a simple assault. (Def.'s Sentencing Mem. 3-8.) For the reasons stated below, we reject both arguments.

      A.      <u>Simple Assault as Crime of Violence</u>

Under the Sentencing Guidelines, a crime is a crime of violence for the purpose of section 4B1.4 if it is punishable by more than one year and it:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) . . . otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). In <u>United States v. Dorsey</u>, 174 F.3d 331 (3d Cir. 1999), the Third Circuit Court of Appeals found that simple assault is a crime of violence for the purpose of section 4B1.4. The Court has consistently applied the <u>Dorsey</u> conclusion in subsequent cases. See, e.g., <u>U.S. v. Wolfe</u>, 301 Fed. App'x. 134, 137 (3d Cir. 2008); <u>U.S. v. Green</u>, 282 Fed. App'x. 200, 202 (3d Cir. 2008); <u>U.S. v. Tucker</u>, 266 Fed. App'x. 120, 122 (3d Cir. 2008); <u>U.S. v. Ernst</u>, 223 Fed. App'x. 173, 176 (3d Cir. 2007).

Jones argues that the <u>Dorsey</u> line of cases has been abrogated by the Supreme Court's recent decisions in <u>Begay v. United States</u>, 128 S.Ct. 1581 (2008), and <u>Chambers v. United States</u>, 129 S. Ct. 687 (2009). We disagree.

The issue before the Court in Begay was whether a defendant's prior conviction for driving under the influence of alcohol constituted a "violent felony" under the Armed Career

Criminal Act. Begay, 128 S.Ct. at 1583. The Act defines "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year [that] (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). The Court found that a crime could only be classified as a violent felony under that statute if it is "roughly similar, in kind as well as in degree of risk posed, to the examples themselves." Begay, 128 S.Ct. at 1585. The Court stated that covered crimes should be those where the relevant "conduct is such that it makes [it] more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim" because "[c]rimes committed in such a purposeful, violent, and aggressive manner are 'potentially more dangerous when firearms are involved.'" Id. at 1586.

Subsequently, in Chambers, the Court found that the crime of failure to report for criminal confinement is not a "violent felony" under the Armed Career Criminal Act because "it does not 'involv[e] conduct that presents a serious potential risk of physical injury to another.'" Id. at 692. The Court found persuasive the fact that "the crime amounts to a form of inaction" and that "an individual who fails to report would seem unlikely, not likely, to call attention to his whereabouts by simultaneously engaging in additional violent and unlawful conduct." Id.

We find that neither Begay nor Chambers disturb the Third Circuit's finding that simple assault as defined under Pennsylvania law is a violent crime under 18 U.S.S.G. § 4B1.4. In Pennsylvania, a person is guilty of simple assault if he:

> (1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another; (2) negligently causes bodily injury to another with a deadly weapon; [or] (3) attempts by physical menace

to put another in fear of imminent serious bodily injury . . . .

18 Pa. Const. Stat. Ann. § 2701(a) (2003).  In determining whether simple assault is a violent crime, "we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."  Begay v. U.S., 128 S.Ct. at 1584.  See also U.S. v. Otero, 502 F.3d 331, 335 (3d Cir. 2007) ("We are required to take a categorical approach when deciding whether . . . [the crime is] a crime of violence."); U.S. v. Brice, 2008 U.S. Dist. LEXIS 95020 at *10 (E.D. Pa. Nov. 20, 2008).  We find that simple assault is indeed a crime of violence.  A person can only be guilty of assault if he either actually injures someone or "attempts by physical menace" to put them in fear of injury.  18 Pa. Const. Stat. Ann. § 2701(a).  This is exactly the type of crime that is "potentially more dangerous when firearms are involved," Begay, 128 S.Ct. at 1586, because, by its very nature, it "presents a serious potential risk of physical injury to another," Chambers, 129 S.Ct. 692.  Therefore, we find no reason to deviate from the Dorsey line of cases.

      B.     Evidence of Defendant's Assault

We turn next to Jones's argument that there was "no credible evidence" at trial that he did in fact utilize the gun in connection with a simple assault.  Under governing precedent, in order to apply the sentencing enhancement under U.S.S.G. § 4B1.4(b)(3)(A) and § 4B1.4(c)(2)(A), we must find by a preponderance of the evidence that Jones used or possessed the firearm in connection with a crime of violence.  The decision of the Third Circuit Court of Appeals in United States v. Mack, 229 F.3d 226, 228 (3d Cir. 2000), is directly on point on this issue.  In Mack, as in this case, the defendant was convicted of one count of possession of a

firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). There, the Government requested a U.S.S.G. § 4B1.4(b)(3)(A) sentencing enhancement because the defendant used the gun to shoot another man. At sentencing, the defendant argued that "because he was convicted only of possessing a firearm and not of any crime of violence [the sentencing enhancement did] do not apply to him." Mack, 229 F.3d at 233. The district court rejected this argument, stating:

> To apply [§ 4B1.4], it is enough that the government prove by a preponderance of the evidence that Mr. Mack possessed or used the gun in connection with a crime of violence, it is not required to prove that he was convicted of a crime of violence.

Id. at 233. The defendant appealed, arguing that the district court was required to find "by clear and convincing evidence" that he committed the crime of violence. The Third Circuit affirmed the district court decision, finding that preponderance of the evidence was indeed the correct standard by which the district court had to find that the defendant committed the predicate crime of violence for a § 4B1.4 enhancement.

We find that the evidence offered at trial in this case did establish by a preponderance of the evidence that Jones utilized the weapon in connection with a crime of violence. Brian Titus, one of the Temple students who wereApril 16, 2009 on the scene that night, testified that Jones pointed the gun at him. (Trial N.T., Nov. 20, 2008, 80:8-80:14.) Titus explained that Jones came to the fraternity party with some people who had been asked to leave the party earlier that night. (Id. at 71:22-74:12.) He stated that another student at the party and the people that were with Jones began screaming at each other. (Id. at 74:19-75:5.) When it became evident that they were going to fight, the group crossed the street. (Id. at 76:7-76:20.) There, Titus attempted to stop the other student. (Id. at 78:14-78:19.) Titus testified: "[T]hat's when I noticed that [the] black gentleman [had] a shiny object in his hand, and I realize it's a gun, and that he pointed it at

us, held it sideways . . . ." (Id. at 78:25-79:5.)  He stated that Jones then told them to "[g]et in the car" but Titus looked at his friend and said, "There's no f***ing way we're getting in that car." (Id. at 81:6-81:15.)  At that point, the Temple police officers arrived.  As they arrived, Jones looked at Titus and said "There's nothing wrong here" and "tried to walk away casually." (Id. at 82:7-82:10.)  Titus testified that:

> [T]he cop looked at me, like what happened? And I said, that guy pulled a gun on me.  And then that guy took off and then the bike cops ran after him. . . . He ended up running in between the side alley. . . .

(Id. 82:11-82:19.)  The Government then asked Titus: "Did you ever see the person with the gun after that time?"  Titus responded "No . . . not until today" and then pointed at Jones.  (Id. at 84:23-85:2.)

Wesley Bridges, another one of the students who were on the scene that night, testified at trial that Jones:

> pointed the gun at my friend, told him to get in the car, and then pointed it to me, and then that's when the cops rolled up on bikes . . . . When the cops came, he walked down the sidewalk and started to run, ran across the street into an abandoned lot.

(Id. at 44:10-44:14.)  At the time, Bridges was only about eight to ten feet away from the person who pointed the gun at him.  (Id. at 65:13-65:15.)  He specifically testified that Jones pulled the gun "[f]rom . . . his abdomen area . . . like around the waist."  (Id. at 51:13-51:14.)  Bridges's testimony established that it was Jones who pointed the gun at him.[2]  Bridges also stated that,

---

[2]     Bridges described the person who pointed the gun as "maybe 5'10" 5'8," black, "heavier set," and "early 30's or something like that." (Trial N.T., Nov. 20. 2008, 52:2-52:10.) This description matches Jones's physical description.  He described the man with the gun as running into the a vacant lot while being chased by the police.  (Id. at 50:12-50:16.)  This was the vacant lot where Jones was apprehended by the police moments after his encounter with

while the gun was only pointed at him for approximately fifteen to twenty seconds, "it seemed like forever . . . because you don't really expect to get a gun pulled on [you]. . . and it's just like time froze." (Id. at 52:23-53:4.)

Another witness at the trial, Officer Francis Gonzalez, testified that, when he arrived on the scene, he asked one of the students what was going on and noted that the student "looked scared . . . his eyes were like popping out of his head." (Id. at 110:1-110:4) The student "didn't say anything at first," but when Jones turned around to walk away, the student "pointed to his back and yelled . . . that he had a gun." (Id. at 110:5-110:8.) At that point, Jones ran off into the alley, and the officers pursued him and apprehended him.

We found the testimony of each of these witnesses to be credible and reliable. Accordingly, we find by a preponderance of the evidence that, by pointing a gun at the Temple students and ordering them to get in his car, Jones clearly attempted by physical menace to put the students in fear of imminent serious bodily injury. Thus Jones committed the crime of simple assault as defined by 18 PA. Const. Stat. Ann. § 2701(a).

For these reasons, we find that the application of a sentencing enhancement pursuant to § 4B1.4 is appropriate in this case.

III.     ACCEPTANCE OF RESPONSIBILITY

Jones argues that he is entitled to a two-level reduction in his offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. "[A] defendant seeking a reduction for

---

Bridges. We find that this testimony adequately established that it was Jones that pointed the gun at him that night.

acceptance of responsibility bears the burden of establishing by a preponderance of the evidence that he or she is entitled to the reduction." U.S. v. Boone, 279 F.3d 163, 193 (3d Cir. 2002). In the present case, we find that Jones has failed to establish that he is entitled to such reduction.

A defendant is entitled to an acceptance of responsibility reduction if "the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). According to the application notes for § 3E1.1:

> In determining whether a defendant qualifies [for the two-level reduction] under subsection (a), appropriate considerations include, but are not limited to, the following: (a) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct) . . . [A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility . . .

18 U.S.S.G. § 3E1.1. Relevant conduct under § 1B1.3 includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S.S.G. § 1B1.3(a)(1).

The notes highlight that only in "rare situations" will a defendant who chooses to go to trial be entitled to the reduction. 18 U.S.S.G. § 3E1.1 application note 2. This only applies in cases where the "defendant . . . clearly demonstrate[s] an acceptance of responsibility for his criminal conduct." Id. In such cases "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." Id.

Here, Jones claims that he is entitled to the reduction because "he told the federal authorities, at the time of his arrest, that he did possess the gun" and he "testified at trial and admitted to possessing the gun." (Def.'s Sentencing Mem. 10.) However, we find that the

9

reduction does not apply because Jones made inconsistent statements regarding facts that were relevant to the criminal conduct and challenged the Government's factual assertions regarding the relevant conduct, thereby putting "the government to its burden of proof at trial by denying the essential factual elements of guilt." 18 U.S.S.G. § 3E1.1 application note 2.

    We turn first to the inconsistent statement regarding Jones's relevant conduct. At the suppression hearing, Detective David Plumber, one of the persons who took Jones into custody on the federal charge, testified that, when Jones was apprehended, Jones stated that he took the gun from his son. (Suppression Hr'g N.T., July 10, 2008, 26:6-26:13.) However, Jones testified at trial that, he "grabbed the gun and wrestled it away from" an unidentified black male who was not his son. Jones described him as "a little skinny kid in a hoodie." (Trial N.T., Nov. 20, 2008, 193:3-194:19.) Jones also testified at trial that, at the time of his apprehension, he told Detective Plumber that "he took the gun off that kid," not that he took the gun off his son. However, we find Jones's testimony not to be credible and instead believe Detective Plumber's opposite testimony. We therefore find that Jones did not truthfully admit all of the relevant conduct related to his crime.

    On the other hand, even if Jones did say that he "took the gun off that kid," we find that such statement would be untruthful. At trial, Jones testified that he wrestled the gun away from "a little skinny kid in a hoodie." However, no other witness testified that Jones struggled with anyone at the time of the incident. In fact, Wesley Bridges testified that he saw a male meeting Jones's physical description pull the gun "from his abdomen area" and saw that same male point the gun at his friend and eventually run into the alley where Jones was arrested. (Id. at 51:13-53:4.) The evidence at trial established that Jones did not take the gun away from anyone during

the incident. Therefore, even assuming that Jones did tell the police that he "took the gun off that kid," we find that Jones made a false statement regarding relevant conduct.

Secondly, at trial, Jones vigorously disputed many factual elements which had a direct bearing on his guilt or innocence. For example, in challenging the Government witnesses' factual assertions, Jones: (1) disputed that he ever pointed the gun at the students or told them to get in the car (id. at 193:3-194:10); (2) testified that, contrary to the students' versions of the events, he took the gun away from an unidentified black male (id. at 193:3-194:19); and (3) testified that, once he stopped running away from the police, he neither fell down not was tackled as the police officers testified, but rather "laid down" (Id. at 196:6-196:8). We find that this is
not one of those "rare situations," where a "defendant goes to trial to assert and preserve issues that do not relate to factual guilt." 18 U.S.S.G. § 3E1.1 application note 2. Jones did not raise a purely legal defense. Instead, Jones challenged many of the Government's material factual assertions that related directly to his guilt and put the government "to its burden of proof at trial." See U.S. v. DeLeon-Rodriguez, 70 F.3d 764, 768 (3d Cir. 1995) (finding that the defendant was not entitled to a reduction because he "contested his factual guilt . . . beyond a mere legal challenge"). Furthermore, as we explained above, we find that the evidence at trial established, by a preponderance of the evidence, that Jones did indeed commit simple assault by pointing a gun at the Temple students. Because Jones denied that conduct, he is not eligible for the downward departure. U.S. v. Irvin, 369 F.3d 284, 288 (3d Cir. 2004) ("When a defendant denies relevant conduct that the district court subsequently determines to be true, a district court may properly deny a downward adjustment for acceptance of responsibility.").

Accordingly, we find that Jones is not entitled to a reduction for acceptance of responsibility.

IV.     RELEVANT FACTORS UNDER 18 U.S.C. § 3553

In determining Jones's sentence, we considered each of the relevant factors under 18 U.S.C. § 3553 and determined that together they required that we impose a lengthy sentence in this case.[3]

One of the factors that we find most relevant in this consideration is Jones's history—in particular the number, nature, and timing of his previous crimes. Many of the previous offenses committed by Jones as an adult were committed while he was on bail or probation for another offense. At age eighteen, Jones was arrested for theft and receipt of stolen property. (Gov't's Mem 15; PSR ¶¶ 32-33.) While on bail on that offense, he was arrested a month later for possession of cocaine with intent to deliver. He was found in possession of 117 packets of

---

[3] The relevant considerations include:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . (5) any pertinent policy statement . . . (6) the need to avoid
unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the the need to provide restitution to any victims of the offense.

cocaine. (Gov't's Mem. 15; PSR ¶¶ 34-35.) While on pretrial release on both of those cases, he was arrested a month later for another cocaine trafficking offense. (Gov't's Mem. 15; PSR ¶¶ 36-37.) Jones pled guilty to the three offenses and was sentenced to three to ten years in prison. (Gov't's Mem. 15; PSR ¶ 38.)

After he was sentenced for those offenses, he was charged with an offense that he committed while on bail on the last three open cases. It is this latest prior offense that we find most troubling. In that case, Jones pled guilty to involuntary deviant sexual intercourse, kidnaping, possession of an instrument of crime, and conspiracy. (Gov't's Mem. 15; PSR ¶¶ 39-40.) He also later pled guilty to aggravated assault. The criminal complaint charged as follows:

> [D]efendant did forcibly abduct R.A. and took her to [another location where] defendant and others forcibly made R.A. engage in oral sex while beating and strangling her. She was then taken by defendant and cohorts to [another location] where defendant and other held her against her will, put a broomstick in her vagina, put bullets in her rectum, forced her to engage in oral, rectal and vaginal sex and required her by force or threat of force to suck on the penises of approximately 11 different males. [C]omplainant was also required to take the barrel of a shotgun in her mouth.

¶ 40.) Jones was sentenced to six to twelve years imprisonment for that offense and was released from parole supervision on June 28, 2005. (PSR ¶ 41.) We find that this offense evidences a violent, ruthless side to Jones's character that is consistent with the allegations in this case. We also find that, given this offense, the testimony regarding Jones's attempt to force the Temple students into his car at gunpoint is particularly chilling. It was only three months after being released from parole on this last offense that Jones committed the present crime.

Jones's criminal history is that of a man who has no respect for the law and for whom criminal charges seem to pose no threat. Jones committed crimes even when he knew he was

under the direct scrutiny of the authorities. We also find that Jones's deviant sexual intercourse and kidnaping offenses show that he is a dangerous man who poses a serious threat to society. The combination of Jones's lack of respect for the law and his potential for dangerous conduct lead us to find that a sentence towards the high end of the sentencing guidelines range is necessary to protect society.

We also find relevant the nature and location of Jones's crime at issue in this case. Jones, an adult, drove to the site of a college fraternity party near Temple university. Jones brought a gun to the vicinity of a college party scene and decided to brandish the gun and point it at students who had been drinking. In so doing, Jones brought great danger to a college setting, a place where young people abound, and where they are entitled to feel safe. We find that such circumstances make this case of possession particularly serious and deserving of a high sentence that adequately reflects the dangerous and egregious nature of the crime.

Consideration of these and all other factors set out in 18 U.S.C. § 3553 led us to sentence Jones to a term of imprisonment that was at the higher end of the advisory range of 262 to 327 months as determined by the United States Sentencing Commission.

V.  CONCLUSION

Accordingly, we found that the PSR in this case correctly included a sentencing enhancement under U.S.S.G. § 4B1.4 and correctly excluded a sentencing reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. We further found that a complete

consideration of all the 18 U.S.C. § 3553 factors required that we impose a severe sentence in this case. For these reasons, we sentenced Jones to a term of imprisonment of 300 months.

BY THE COURT:

/s/Legrome D. Davis

U.S. District Court Judge